ÁNGEL RAÚL POSTIGO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. O-67-4.     Decided October 8, 1968.

---

536

*Enrique Báez García* for appellant. The respondent Registrar appeared by brief.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This case presents a clear example of why modern mortgage thinking is contrary to registry mentions and why the latter—as Roca Sastre says—"have been driven out of registry books by the [new] [Spanish] mortgage legislation in force."[1]

The facts may be summarized as follows. In 1932, Vicenta Valentín González, by virtue of a private lease contract, built a frame house on lot number 380 of Estación Street of Mayagüez. In 1933, by a public deed, the partition of inheritance of Alfredo Cristy Vanell, who had been owner of the aforementioned lot, was made, and the lot was adjudicated to his heir José Alfredo Cristy Guenard.

When Cristy Guenard recorded the title to the lot, mention was made of the existence thereon of a house belonging to "Vicente González." This was, at plain sight, a clerical error since the correct name of the owner of the house was Vicenta Valentín González. The Superior Court itself which

---

[1] III *Derecho Hipotecario* 346 (1948).

took cognizance of the matter stated in its Order that "The true name of the owner of the building was not Vicente González but Vicenta Valentín González. . . ."[2]

In 1936 Vicenta sold the house to Carmelo Rodríguez and his wife. The latter sold it in 1940 to José Cruzado and his wife and the latter in turn sold it in 1943 to Antonia Laracuente. The last owner of the house so far mentioned, Antonia Laracuente, subsequently married Ruperto Rivera Ocasio.

In 1965, Ruperto Rivera Ocasio, already married to Antonia Laracuente, purchased the lot where his wife Antonia's house was erected from its owner, Cristy Guenard. The following year Ruperto Rivera Ocasio and his wife Antonia Laracuente sold the lot and the house to Ángel Raúl Postigo, appellant herein.

When the ownership of the lot and the house passed to a sole owner—Ángel Raúl Postigo—the latter wanted to free his property from the aforesaid mention and filed in the Superior Court an *ex parte* proceeding for that purpose. In said proceeding he established by evidence that the correct name which should have appeared in the mention was Vicenta Valentín González and not Vicente González, as it erroneously appeared therein, and he showed that the uninterrupted chain of titles of the house and the lot finished in his person, making him thus the sole owner of said properties. It was thus found proved and decided by the trial court.

In its Order of October 6, 1966, said court, after setting forth in detail the facts and reaching the aforementioned conclusion, ordered the Registrar of Property to cancel the mention which gave rise to these proceedings. The Registrar refused to do so by means of a note which reads as follows:

---

[2] Superior Court, Mayagüez Part, Civil No. CS-66-2079, On Cancellation of Mention.

"The document is remanded and registration thereof suspended because the record owner of the mention of the house sought to be cancelled was not summoned nor heard in the cancellation proceeding, a marginal notice being entered in its place for a 60-day suspension at entry number 440 folio 220 of Book 267."

■ As it is known, "the mention is a mere notice entered by the registrar of the existence of an unrecorded interest." *Miranda* v. *Registrar*, 45 P.R.R. 385, 387 (1933). "As concerns registration"—Roca Sastre says—"mention is a mere indication of the existence of a lien or encumbrance on a property, made in an entry concerning the same."[3] Casso Romero calls it "the allusion made in an entry, of a personal or property right different from that giving rise thereto."[4]

■ Pursuant to the text in force of our Mortgage Law of 1893—Art. 29; 30 L.P.R.A. § 54—any property right expressly mentioned in records or cautionary notices, shall be effective against third persons. And of course, in order to cancel a property right thus mentioned it is necessary that the person in whose favor the mention is made or his successors in interest, or legitimate representatives, signify their consent, *Valcárcel* v. *Registrar*, 75 P.R.R. 922 (1954), or that they have been the defeated party in a trial and it is so ordered by a competent court. *Puffer* v. *Registrar*, 61 P.R.R. 37 (1942). The state of our mortgage law in force is, then, that the mention is extinguished only by its formal cancellation. It is protected by registration and its effect cannot be ignored as long as it appears in the Registry.

The foregoing should be understood as conforming to the provisions of Art. 388-A of the Mortgage Law, added to said law in 1923, on cancellation of entries. 30 L.P.R.A. § 703. Said article provides, *inter alia*, that the registrars of property, on application of a party, shall proceed to cancel any

---

[3] *Op. cit. supra*, footnote 1.

[4] *Derecho Hipotecario* 555, 4th ed. (1951).

mentions of property rights recorded in the books of the registry, if more than ten years have elapsed since the respective mention was made, when the interested party, within the term of six months from the effective date of said article, has not requested the entry of the mentioned right or has not brought judicial action to claim his right and entered such claim in the registry.

If in the instant case it was merely sought to cancel a mention correctly made, the Registrar would be right.[5] But in point of fact, the matter is more complex. This appeal arises because the mention was erroneously constituted from the beginning. As Roca Sastre indicates, there are situations—and error is one of them—in which the third party holder is not bound to support the lien imposed by the mention. In discussing the scope of the effect of prejudicing a third party, said author explains:

"The mention of a right does not presuppose that the third party holder of the property should necessarily and in every case support or tolerate the action of such right. . . . Thus, the said holder may challenge the right mentioned, showing that it has never been constituted, *or that it was erroneously constituted,* or that it is extinguished; *he has a contradictory action aimed to correct the Registry,* when the latter considers effective by virtue of the mention, a right which in juridical reality does not exist."[6] (Italics ours.)

■ We are concerned here, in essence, with the challenge to an erroneous mention, which raised the question of fact of whether the correct name of the owner of the house was Vicenta Valentín González or Vicente González. After hearing the evidence, the trial court, in the exercise of its judicial function, made on this particular the finding which we have previously stated. That judicial finding of fact is

---

[5] Since the mention in this case has not been recorded for more than ten years, the petitioner cannot avail himself yet of the provisions of paragraph (a) of the aforecited Art. 388-A of the Law.

[6] Roca Sastre, III *Derecho Hipotecario* 377 (1948).

binding upon the Registrar and the latter cannot question it. As we have previously stated, the Registrar cannot substitute his judgment for that of the court as to its findings of fact. *Báez* v. *Registrar,* 74 P.R.R. 760 (1953) ; *Bermúdez* v. *Registrar,* 74 P.R.R. 141 (1952) ; *Rosado* v. *Registrar,* 71 P.R.R. 516 (1950) ; *Wilcox* v. *Registrar,* 67 P.R.R. 445 (1947) ; *Santos* v. *Registrar,* 64 P.R.R. 762 (1945) ; *Herrero* v. *Registrar,* 63 P.R.R. 681 (1944) ; *Valiente* v. *Registrar,* 63 P.R.R. 143 (1944).

██ It having been judicially determined as a matter of fact, as did the trial court, that the correct name which should have appeared in the mention was Vicenta Valentín González, the problem of whether or not the person favored by the right mentioned consented to the cancellation of the mention vanishes, for, when Vicenta sold her house and executed the public deed for that purpose, she gave her consent necessarily and impliedly to the cancellation of the mention.

Formerly, in reversing the refusal of the Registrar to record the cancellation of a mortgage credit, when said officer acted on the ground that in the deed of cancellation the creditor had not consented expressly to the cancellation of the record of the mortgage, we stated as follows:

"Therefore, if from the language of the instrument the conclusion may be reached that the consent is unquestionably given, that is all that is necessary in order to make the cancellation in the registry, even though it is not said that consent is given to such cancellation. It is not necessary to state expressly the consent, an implied consent being sufficient if from the language of the instrument such inference may be deduced in a manner which leaves no doubt that it was given." *Hereter* v. *Registrar,* 18 P.R.R. 783, 784 (1912).

A good synthesis of the modern mortgage thinking, to which we referred at the beginning of this opinion, is made by Casso Romero, Ex-Director of the General Directorate of

Registries of Property and Notaries of Spain. We copy it below:

"A general and justified protest was raised against mentions among mortgage scholars, because they thought they were repugnant to the rule of specialty and also because they were against the trade of real property and the good use of the credit secured by real estate, because they unjustly devalued the property, since in the majority of the cases they referred to illusory liens, and further they posed serious problems *for their cancellation.*

"Add thereto that nothing justified the legal protection they granted to careless or negligent title holders, who did not bother to protect their right before a third party, requesting the separate and special record thereof.

"Therefore, the 1909 reform showed the tendency to deny value to rights 'merely mentioned,' particularly if the mention was ancient (art. 402, M.L., 1909) ; but the persistence of Art. 29 of said law thwarted that purpose.

"The 1944 reform sought, more radically, to suppress them and to divest them of any effect. Thus, in the declaration of policy it was said: 'There is no reason for continuing to mention in the Registry the rights subject to separate and special record. Their entry therein, according to the present manner, renders difficult real estate trade and credit secured by such estate.' And it added: 'It cannot be conceived how our laws, so scrupulous in passing upon and admitting recordable rights, allows uncertain rights, of doubtful validity, and many times of difficult identification to acquire the nature of true mortgage ranks.'

"In conformance therewith, the present art. 29 of the Mortgage Law provides that the authority of the Registry *shall not extend* to the 'mention' of rights subject to *separate and special* record." *Op. cit.* at p. 556.

In view of the foregoing and after brief meditation on the matter it can be understood why the new Spanish Mortgage Law "drove out" mentions from Registry books. Roca Sastre comments:

"Articles 29 and 98 of the new Mortgage Law are produced in the sense of *denying effect* to mentions subsequent to the

aforesaid date. [July 1, 1945.] Likewise as of the effective date of the present Mortgage Law of February 8, 1946, *mentions cannot be entered any longer,* since subdivision two of art. 9 of said law has eliminated the circumstance concerning the liens of the right to be recorded and which formerly had to be expressly stated in the record."

.   .   .   .   .   .   .   .

"Article 29 of the Mortgage Law in force establishes that 'the authority of the Registry shall not extend to the *mention* of rights subject to separate and special record.' "

.   .   .   .   .   .   .   .

"Hence, all, absolutely all mentions properly speaking (1) which were entered or made prior to January 1, 1945, have become *extinguished, ineffective* at the present time, and the Registrars cannot enter them as encumbrances in the certificates they issue, nor refer to them as liens in the subsequent entries they make.

"The first temporary provision clearly prescribes that these mentions 'shall become extinguished and ineffective.' This extinguishment has been produced by the law, *ipso jure* or automatically, and such mentions should be considered as not made or entered." *Op. cit.* at pp. 368 and 382.

The Spanish mortgage legislation has been object of considerable reforms. It was reformed in 1909, in 1944, and in 1946. The Regulations were amended in 1947 and 1959.[7] The Mortgage Law of Puerto Rico which dates from 1893, although it has been amended, needs a general reform. Work has been made in that sense.

In 1925 a bill was presented to amend the Mortgage Law (H.B. 226) and by Joint Resolution No. 24 of that year the Legislature designated a committee to prepare a general reform plan for the Mortgage Law and its Regulations. Said reform was not carried out. In 1948, when the

---

[7] For an outline of these reforms see Hernández Gil, *Introducción al Derecho Hipotecario* 71–79 (1963). There is an official edition of *Ley y Reglamento Hipotecario* (1959) of the Ministry of Justice of Spain, with a General Index, Alphabetical Index and Concordance.

writer of the opinion was Legislative Counselor, the Office of Legislative Counsel of the Legislature of Puerto Rico "in answer to the urgent need of revising and putting in order our mortgage legislation" published a *Proposed Mortgage Code of Puerto Rico* prepared by the distinguished Puerto Rican professor, Don Luis Muñoz Morales.[8] Said proposed code (S.B. 191) was presented in 1950 by Senator Cruz Ortiz Stella, but no action was taken then on that matter undoubtedly because of its complicated and technical nature.

In 1963 the distinguished Cuban mortgage scholar, Don Agustín Aguirre y Torrado, prepared, at the request of the then Secretary of Justice, Hiram R. Cancio, a Proposed Mortgage Law and its Regulations, which he accompanied with an expository statement. The next Secretary of Justice, Rafael Hernández Colón, favored said draft and in 1965 designated a Committee to continue the work.[9] Said Committee, making use of the works previously mentioned and of their own initiative, prepared a *Proposed Mortgage Code of Puerto Rico* which was submitted by the Governor to the Legislature in 1967. (H.B. 782.) It is desirable that the Legislature may, in the near future, give attention to such an important and useful matter for the revitalization of our autochthonous law.

As to the specific matter involved in this opinion, H.B. 782 of 1967 contains the best tendency on the subject and reaffirms the rule of not mentioning the rights subject to separate record, providing for the cancellation thereof motu proprio or at the request of a party. Thus, the first of the temporary provisions of said draft reads, insofar as pertinent, as follows:

---

[8] See, Rigau, *"Nota Preliminar"* of said publication.

[9] This Committee was composed of Mr. Rafael Hernández Matos, Justice of the Supreme Court, Mr. Domingo Toledo Alamo, Mr. Dennis Martínez Irizarry, Mr. Osvaldo de la Luz Vélez, Mr. Arturo Reichard Zamora, and Mr. Luis Mojica Sandoz.

544

"Any mentions of rights subject to separate and special record as well as of personal rights, entered in the Registries, shall become extinguished and ineffective, being cancelled motu proprio or at the request of a party, even if they had been stated or referred to in subsequent titles or records, when the interested party, within the term of six months from the date on which this Code takes effect, has not requested the entry of the mentioned right or has not brought judicial action to claim its right entering such claim in the registry."

The trial court having decided in the manner afore-stated the question of fact as to which was the correct name of the owner of the house acquired by appellant, for the reasons stated in this opinion the Registrar's note will be reversed and the cancellation requested by appellant will be ordered.